UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANCITA WARD,

        Plaintiff,         Case Number: 05-72330

v.        JUDGE PAUL D. BORMAN
        UNITED STATES DISTRICT COURT

A-1 INTERNATIONAL COURIER SERVICE,
INC, a New Jersey Corporation,

        Defendant.
_____ /

**OPINION AND ORDER DENYING DEFENDANT A-1 INTERNATIONAL COURIER SERVICE, INC.'S MOTION FOR SUMMARY JUDGMENT (DOCK. NO. 26)**

Now before the Court is Defendant A-1 International Courier Service, Inc.'s ("Defendant") Motion for Summary Judgment. On June 30, 2006, Defendant filed the present Motion for Summary Judgment. Plaintiff filed her response on August 2, 2006. Defendant filed its reply on August 9, 2006. The Court held a motion hearing on January 18, 2007.

Having considered the entire record, and for the reasons that follow, the Court DENIES Defendant's Motion for Summary Judgment.

**I.    FACTS**

In this action, Plaintiff Francita Ward ("Plaintiff"), a resident of Michigan, brought suit on June 13, 2005 against Defendant, a New Jersey corporation, based on race discrimination under the Michigan Elliot-Larsen Civil Rights Act ("ELCRA").

This controversy revolves around Plaintiff's November 11, 2003 termination from Defendant. Plaintiff is an African-American woman hired by Defendant in January of 1996, as a

part-time data clerk. Defendant is a courier of parts, which maintains warehouses with customer components, to be delivered on demand. (Def.'s Br. 1).

In December of 1997, Plaintiff was promoted to midnight dispatcher,[1] which required her to take calls for delivery and pickup, dispatching drivers, handling customer order documents, and securing parts stored in Defendant's Ferndale warehouse.

During the course of her employment, Plaintiff received two written warnings and received one documented oral warning. (Def.'s Br. 2). On April 12, 1998, Plaintiff was absent from work without permission. (Def.'s Br. Ex. B, 4/13/98 Absentee Report). Defendant filled out an Absentee Report stating that Plaintiff "didn't want to work holiday [sic]." (*Id*.). As a result of Plaintiff's absence, Plaintiff was suspended for one day. (Def.'s Br. Ex. B, 4/13/98 Ward Absentee Report).

Plaintiff also received a written Employee Warning Notice due to attendance and insubordination violations on August 2, 1999. (Def.'s Br. Ex. C, 8/2/99 Employee Warning Notice). Defendant noted that Plaintiff "[d]id not return from vacation on assigned day[.] Accused supervisor of being a racist when he refused a collect call. Supervisor refused call because employee was irate on previous phone call." (*Id*.). For this violation, Plaintiff was suspended for two days without pay. (*Id*.). The Employee Warning Notice does not identify any previous warnings. (*Id*.).

Plaintiff received a documented oral warning on December 12, 2002. (Pl.'s Resp. Ex. D, 12/12/02 Employee Warning Notice). On December 11, 2002, Plaintiff did not follow "failed

---

[1] The midnight shift ran from 12:00 a.m. to 6:00 or 7:00 a.m. (Def.'s Br. Ex. B, Ward Dep. 27).

2

delivery procedures because she used a notepad on a delivery that was going to be late." (*Id*.). Officially, Plaintiff was orally warned for failure to follow instructions. (*Id*). No additional action was taken. (*Id*.).

Plaintiff testified that she was verbally criticized by Vice President of Operations John Rutigliano two or three times for being argumentative. (Def.'s Br. Ex. B, Ward Dep. 60). Plaintiff also testified that she was verbally criticized by Dominic Cirino, over five times, for being argumentative.[2] (Def.'s Br. Ex. B, Ward Dep. 59). The record does not show that Plaintiff was formally warned for being argumentative, besides an inference in the August 2, 1999 employee warning notice. (*See* Def.'s Br. Ex. B, Ward Dep. 60-61). According to Defendant, during a nine and a half month period, Plaintiff was sick eighteen days, off three days, six hours late on one occasion, and took six days vacation. (Def.'s Br. 3).

On October 9, 2003, Plaintiff visited a Health Center and was diagnosed with swelling in her left knee due to an injury at home. (Def.'s Br. Ex. G, 10/9/03 Doctor's Note). Plaintiff was advised by her doctor not to climb more than two or three steps for a period of two weeks. (*Id*.).

Plaintiff returned to work on November 21, 2003, but failed to bring a doctor's note. (Def.'s Br. 3). That same day, according to Defendant, Plaintiff was terminated due to absenteeism, sleeping on the job, and being argumentative. (*Id*.). Plaintiff does not believe she was terminated for the reasons stated by Defendant. (Pl.'s Resp. 3). Plaintiff received a termination letter apparently backdated to October 15, 2003, stating only that Plaintiff's services were no longer needed. (*Id*.).

---

[2] Defendant asserts that Plaintiff was reprimanded verbally a number of times for sleeping on the job and for absenteeism. (See MacDonald Aff.). Plaintiff contests Defendant's assertion.

**II.    ANALYSIS**

    **A.    Standard of Review**

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable

inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. FED. R. CIV. P. 56(e). The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment). "'[C]onclusory' allegations unsupported by 'specific' evidence will be insufficient to establish a genuine issue of fact." *Id.* (citations omitted). *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 902 (1990).

"[T]he showing (whether as to standing or the merits) required to overcome a motion for summary judgment is more extensive than that required in the context of a motion to dismiss." *Id*. "The principal difference is that in the former context evidence is required, while in the latter setting the litigant may rest upon the allegations of his complaint." *Id.* (citations omitted); *see* FED. R. CIV. P. 56(e) (requiring the "nonmoving party to go beyond the pleadings.").

**B.     Discussion**

Defendant argues that Plaintiff failed to establish a prima facie case of race

discrimination because she is unable to show that she was replaced by a person outside the protected class, or that she was treated less favorably than similarly situated, non-protected employees. Defendant contends that Plaintiff is also unable to show that Defendant's legitimate, non-discriminatory reasons for discharge were pretextual.

Plaintiff responds that she can establish a prima facie case of discrimination by showing that upon discharge, she was replaced by a white person. Plaintiff also avers that there were other white employees who worked for Defendant and were criticized for similar behavior, but treated differently than Plaintiff.

In analyzing claims of unlawful discrimination under the ELCRA based upon indirect evidence, the Court must apply the following three-step *McDonnell-Douglas* framework. *Hazle v. Ford Motor Co.*, 464 Mich. 456, 462-63 (Mich. 2001) (relying upon Title VII jurisprudence in adjudicating state anti-discrimination claims). First, the plaintiff must establish a prima facie case of unlawful discrimination. *Clayton v. Meijer, Inc.,* 281 F.3d 605, 610-11 (6th Cir. 2002). Once the plaintiff establishes a prima facie case of unlawful discrimination, a presumption of such unlawful discrimination arises, and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *See Texas Dept. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254-55 (1981). If the defendant meets this burden, then the presumption of unlawful discrimination disappears, and the plaintiff must then demonstrate by a preponderance of the evidence that the proffered reason was a mere pretext for unlawful discrimination by establishing that the proffered reason: 1) has no basis in fact; 2) did not actually motivate the adverse action; or 3) was insufficient to motivate the adverse action. *See Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994). If the

plaintiff demonstrates that the defendant's proffered, legitimate reason is a pretext for unlawful discrimination, then the factfinder may infer unlawful discrimination. *See Kline v. Tenn. Valley Auth.,* 128 F.3d 337, 344 (6th Cir. 1998). Throughout the entire *McDonnell-Douglas* framework, the plaintiff bears the burden of persuasion. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511 (1993). The shifting burdens of proof described in *McDonnell Douglas* are not applicable if a plaintiff can cite direct evidence of unlawful discrimination. *Trans World Airlines, Inc v. Thurston*, 469 U.S. 111, 121 (1985).

> The pertinent part of the ELCRA provides:
>
> (1) An employer shall not do any of the following: (a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment because of religion, race, color, national origin, age, sex, height, weight, or marital status.

M.C.L. § 37.2202(1)(a). "Although federal precedence interpreting the federal Civil Rights Act is not binding on Michigan courts interpreting our own civil rights statutes, federal precedence can be used as guidance by Michigan courts." *Downey v. Charlevoix Co. Bd. of Road Comm'rs.*, 227 Mich. App. 621, 627 n.3 (1998) (citing *Radtke v. Everett*, 442 Mich. 368, 382 (1993)).

In the instant case, it is uncontested that Plaintiff does not have direct evidence of discrimination and solely relies on circumstantial evidence.

In order to establish a prima facie case of disparate treatment for race discrimination under the *McDonnell-Douglas* framework, a plaintiff must prove that: (1) she was a member of the protected class; (3) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was (a) replaced by someone outside the protected class, or (b) treated less favorably than similarly-situated persons outside the class. *Mitchell v. Toledo Hosp.*, 964 F.2d

577, 582, 582 n.4 (6th Cir. 1992).

Initially, Defendant argues that Plaintiff cannot prove all four elements of the prima facie case. However, Defendant does not dispute that Plaintiff meets the first two elements; Plaintiff is a member of the protected class and she was discharged. Defendant, instead, focuses on the fourth element.

### 1. Replaced by Someone Outside the Protected Class

Defendant asserts that Plaintiff was not replaced by a person outside the protected class. Defendant supports its position that Plaintiff was not replaced by someone outside the protected class by arguing that Plaintiff's job duties were spread among existing employees. Therefore, Defendant contends that Plaintiff was not replaced. Defendant also asserts that one of the two employees who split Plaintiff's duties ultimately took over Plaintiff's job. Defendant avers that the employee who ultimately took over Plaintiff's job was a member of the protected class.

Although Plaintiff's Complaint alleges that Plaintiff was replaced by someone outside the protected class, (Compl. ¶ 8), Plaintiff's Response makes no mention of a non-protected employee replacing her. Instead, Plaintiff appears to allege that she was treated less favorably than a similarly-situated person outside the protected class.

Accordingly, the Court finds that Plaintiff was not replaced by someone outside the protected class.

### 2. Treated Less Favorably than Similarly-Situated Persons Outside the Protected Class

Defendant argues that Plaintiff's similarly situated argument fails on two grounds. Defendant first contends that Sandra Wilhite was also terminated, so she was not treated more favorably. Defendant next asserts that Plaintiff and Wilhite were not similarly situated in all

8

relevant respects.

Plaintiff contends that she was treated differently from Sandra Wilhite. Plaintiff argues that Wilhite was written up three times and progressively disciplined, during her eighteen months on the job, before she was terminated. Plaintiff asserts that she was written up twice in her seven years with Defendant, and was never progressively disciplined before she was fired. The difference, Plaintiff asserts, is that Wilhite received oral and written warnings by Defendant in a progressive fashion before she was fired and Plaintiff did not. Plaintiff also asserts that Wilhite was terminated in close proximity to her progressive discipline, while Plaintiff had very few written warnings – the last one was issued three to four years – before her termination. Thus, Plaintiff contends that it took fewer warnings, over less time, and fewer violations, for her to be fired, as compared to Wilhite.

Defendant replies that its Employee Handbook does not provide for progressive discipline in its absentee policy. Defendant argues that Plaintiff has completely failed to establish that Wilhite was treated more favorably, contending that Wilhite's discipline issues are completely different from Plaintiff's issue of absenteeism, sleeping, and argumentative conduct. Defendant asserts that Wilhite was also terminated.

"To create an inference of disparate treatment, [a plaintiff] must prove that [she was] similarly situated, i.e., [that] all of the relevant aspects of [her] employment situation were nearly identical to those of [the compared employee's] employment situation." *Mich. Dept. of Civ. Rights ex rel. Burnside v. Fashion Bug*, 473 Mich. 863, 869 (2005) (internal quotations omitted). The relevant aspects in this case are the position of the alleged similarly situated employee, the employee's job responsibilities, the number of warnings received, and the reasons for her

9

termination.

Wilhite was hired on December 9, 2002, as an afternoon dispatcher. (Pl.'s Resp. 1). During her employment, she received a number of written warnings. On September 11, 2003 Wilhite was issued a written warning for unsatisfactory work quality. (Pl.'s Resp. Ex. E, 9/11/03 Employee Warning Notice). Defendant states that on August 27, 2003, another employee had to find a part that was on location which was stated on a order. (*Id.*). In addition to the written warning, Wilhite was given probation. (*Id.*). The Employee Warning Notice identifies that Wilhite had "numerous" oral warnings for this kind of violation, but does not give prior dates of those warnings. (*Id.*).

Wilhite was given another written warning on November 13, 2002. (Pl.'s Resp. Ex. E, 11/13/03 Employee Warning Notice). This warning was issued on November 10, 2003 as a result of a customer complaint alleging that Wilhite was rude. (*Id.*). Wilhite was placed on probation. (*Id.*). The Employee Warning Notice indicates that Wilhite received a prior oral warning for rudeness in September 2003 and a prior written warning in November 2003. (*Id.*).

Wilhite's third written warning was dated April 13, 2004. (Pl.'s Resp. Ex. E, 4/13/04 Employee Warning Notice). Wilhite received this warning because she did not read a work order correctly; she thought it was a pickup when it was a delivery. (*Id.*). Plaintiff's violation was identified as unsatisfactory work quality, carelessness, and failure to follow instructions. (*Id.*). Plaintiff was place on a ninety-day probation period. (*Id.*).

Wilhite was fired on May 3, 2004, for (1) continuous failure to follow corporate procedures and (2) rudeness to customers, couriers, and fellow employees. (Pl.'s Resp. Ex. E, 5/3/04 Wilhite Termination Letter).

As mentioned previously, the relevant aspects in this case, when determining whether Wilhite is similarly situated, include: her job position, responsibilities, the number of warnings she received and for what violations, and the reason(s) for her termination. Plaintiff and Wilhite were, in some ways, similarly situated. Both Plaintiff and Wilhite were dispatchers. Both also received written warnings. However there are differences. Plaintiff was the midnight dispatcher, while Wilhite was the afternoon dispatcher. (Def.'s Br. 1). While both were "dispatchers" and their duties were similar, their responsibilities varied. Plaintiff's duties as midnight dispatcher were taking calls from customers for delivery and pickup, dispatching drivers, handling documents relating to customer orders, and securing parts stored in the Ferndale warehouse. (*Id.*). Wilhite's duties were the same as Plaintiff's, except she was responsible for a greater volume of calls received.[3] Wilhite was also responsible for a greater number of drivers to dispatch.[4] (*Id.*). Wilhite was disciplined for unsatisfactory work quality, carelessness, failure to follow instructions, and rudeness to clients. Plaintiff was disciplined for attendance and insubordination.

Although both Plaintiff and Wilhite were eventually terminated, the Court does not agree that they were treated the same. Plaintiff was treated less favorably in the sense that she did not receive progressive discipline and had no recent disciplinary actions in written form in her personnel file at the time of her termination. Wilhite, in contrast, had many documented

---

[3] Defendant contends that the afternoon dispatcher received an average of two hundred calls per day, while the midnight dispatcher received an average of five to ten calls per shift. (Def.'s Br. 1).

[4] Defendant contends that the afternoon dispatcher dispatched thirty drivers, while the midnight dispatcher dispatched two drivers. (Def.'s Br. 1).

disciplinary actions taken against her in juxtaposition to her termination.

Accordingly, the Court finds that in a light most favorable to the non-moving party, Plaintiff and Wilhite's positions are nearly identical, Plaintiff and Wilhite are similarly situated, and Plaintiff was treated less favorably than Wilhite. Therefore, Plaintiff meets her prima facie case.

### 3. Pretext

Defendant argues that Plaintiff cannot show that Defendant's non-discriminatory reasons for discharge were pretextual. Here, Defendants contend that Plaintiff was terminated because of absenteeism, sleeping on the job, and argumentative conduct. (Def.'s Br. 14).

In response to Defendant's legitimate, non-discriminatory reason for the decision, Plaintiff "must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision." *Burdine*, 450 U.S. at 256. A showing that the employer's proffered explanation is unworthy of credence can establish that the plaintiff was the victim of intentional discrimination. *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 143 (2000). The prima facie case, and the inferences that can be drawn from the prima facie case, can be considered when looking at whether the defendant's explanation was pretextual. *Id*. "The Supreme Court of Michigan and most federal courts of appeals follow the 'intermediate position' for determining 'the proper summary judgment disposition standard for employment discrimination claims under Michigan's Civil Rights Act.'" *Cicero v. Borg-Warner Auto., Inc*., 280 F.3d 579, 589 (2002) (citation omitted).

> Disproof of an employer's articulated reason for an adverse employment decision defeats summary disposition *only if* such disproof *also* raises a triable issue that discrimination animus *was a motivating factor* underlying the employer's adverse action. In other words, plaintiff must not merely raise a triable issue that the

12

>employer's proffered reason was pretextual, but that it was a pretext for . . . discrimination.

*Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 438-39 (6th Cir. 2002) (emphasis added).  "A court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case.  To do so would bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination."  *Wexler v. White's Fine Furniture*, 317 F.3d 564, 574 (6th Cir. 2003).

"To raise a genuine issue of fact as to pretext and defeat a summary judgment motion under the intermediate position, the plaintiff must show one of the following:  (1) that the proffered reason had no basis in fact, (2) that the proffered reason did not actually motivate the action, or (3) that the proffered reason was insufficient to motivate the action." *Id*. (internal citations omitted).

To show Defendants' proffered reason was pretext, Plaintiff argues that if she was never given a documented oral warning or a written warning for sleeping on the job.  Further, Plaintiff contends that she was never criticized by her boss for being argumentative.  Plaintiff also asserts that Defendant's reasons are pretext because it did not follow its discipline procedure, as evidenced by the written disciplinary action against Wilhite.

The Court finds, taking the evidence in the light most favorable to the non-moving party, that Plaintiff's evidence supports her contention that the proffered reason did not actually motivate Defendant's job action.  In mid-October, Plaintiff suffered a knee injury at home.  Her doctor restricted her from climbing more than two to three steps for two weeks.  Defendant informed Plaintiff that she was not to return to work until her restrictions were lifted.  Plaintiff

13

eventually returned to work on November 21, 2003, but failed to bring a doctor's note. That same date Defendant terminated Plaintiff. Plaintiff was allegedly terminated for absenteeism, sleeping on the job, and being argumentative.

However, at the time of her termination, Plaintiff's personnel file did not include a formal reprimand within the last year. In fact, Plaintiff had not been formally reprimanded through a written warning since August 2, 1999, many years before, when she was suspended for two days without pay for lack of attendance. At no time during her employment had Plaintiff ever been placed on probation, and there was nothing in her personnel file which would have put Plaintiff on notice that she would be terminated for the next violation of any kind. In contrast, as stated above, Wilhite was issued three written warnings, numerous oral warnings, and placed on probation. Plaintiff did not have the benefit of progressive discipline as set forth in Defendant's employee handbook and her personnel file was void of documented disciplinary action. If Plaintiff was terminated for absenteeism, sleeping on the job and being argumentative, than one would expect documentation of at least a recent formal issued warning.

Defendant's Absenteeism and Termination Policies are straightforward.

Employees with above average absenteeism may be required to document the reasons, including providing a doctor's certificate. Upon returning to work from an unexcused absence, the employee must report to his or her supervisor and disclose the reason for the absence. If the supervisor accepts the reason as valid, no discipline will be imposed. If the reason is not acceptable, the employee may be disciplined in accordance with the following schedule:

    First unexcused absence – oral warning
    Second unexcused absence – written warning
    Third unexcused absence – 3-day suspension
    Fourth unexcused absence — 10-day suspension
    Fifth unexcused absence – discharge.

Company management may make exception to this schedule, depending on the

circumstances.

(Pl.'s Resp. Ex. H, Employee Handbook 11).  Defendant's Policy and Procedures Prior to Termination states:

> A. WARNING: If a supervisor determines that an employee is not satisfactorily meeting the requirements of a job, a warning will be given in most cases.  The warning may be given as part of a conversation in which improvements are suggested or as part of a formal or informal performance appraisal.
> B. PROBATION: When a performance problem is such that an employee is not satisfactorily performing in one or more areas of his/her position, a written notice of probation for a specific period of time will, in most cases, be given to the employee. . . .
> C. SUSPENSION: In certain cases, such as when a serious offense has occurred, the employee has not met minimum standards of a warning or where the circumstances make it appropriate, the Company may wish to seek additional information and consultation before making a final determination.  In these cases the employee may be suspended with or without pay until a determination is made.

(Pl.'s Resp. Ex. H, Employee Handbook 29).

While Defendant argues that its policies on absenteeism and disciplinary action appear to be more of a guide then a hard and fast rule, the Court is not convinced.  The policies are in the employee handbook for a reason.  The policies were followed for Wilhite, but not for Plaintiff, even though she gave Defendant many years of service.

In a light most favorable to the non-moving party, Plaintiff has shown that Defendant's legitimate, non-discriminatory reason is pretext.  Accordingly, the Court denies Defendant's Motion for Summary Judgment

### III.    CONCLUSION

For the reasons stated, the Court DENIES Defendant's Motion for Summary Judgment.

**SO ORDERED**.

        s/Paul D. Borman  
        PAUL D. BORMAN  
        UNITED STATES DISTRICT JUDGE

Dated: January 31, 2007

## CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on January 31, 2007.

        s/Denise Goodine  
        Case Manager